# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

TAVON WILLIAMS,

    Petitioner,

    v.

THOMAS WOLFE, WARDEN, and
MARYLAND ATTORNEY GENERAL

    Respondents.

Civil Action No.:  ELH-22-75

## MEMORANDUM OPINION

Tavon Williams, Petitioner, a Maryland State prisoner, has filed a petition for writ of habeas corpus, pursuant to 28 U.S.C. § 2254.  ECF 1, ECF 1-1, ECF 25 (collectively, the "Petition").  Respondents Warden Thomas Wolfe and the Maryland Attorney General filed an answer to the Petition, asserting that the claims were untimely.  ECF 7. By Order of June 16, 2022 (ECF 11), the Court disagreed. ECF 11. Thereafter, respondents filed a supplemental response, asserting that the claims in the Petition are either procedurally defaulted, non-cognizable, or without merit. ECF 14.

The Court subsequently stayed the proceedings to permit Williams to exhaust ongoing Maryland State court proceedings. ECF 16. The stay has since been lifted.  ECF 24.  Williams then amended the Petition to assert an additional claim (ECF 25), which Respondents contend is procedurally defaulted or, alternatively, is without merit.  ECF 26.

No hearing is required to resolve the matter.  *See* Rule 8(a), *Rules Governing Section 2254 Cases in the United States District Courts* and Local Rule 105.6 (D. Md. 2023); *see also Fisher v. Lee*, 215 F.3d 438, 455 (4th Cir. 2000) (petitioner not entitled to a hearing under 28 U.S.C.

§ 2254(e)(2)).  For the reasons that follow, I shall deny the Petition.  And, a certificate of appealability shall not issue.

## I.    Background

On May 23, 2021, Williams was indicted in the Circuit Court for Baltimore City and charged with multiple offenses. ECF 7-1 at 5-10, 88-90. From October 21 to October 25, 2013, Williams was tried by jury and convicted of attempted second-degree murder; second-degree assault; use of a handgun in the commission of a crime of violence; wearing, carrying, or transporting a handgun; possession of a firearm after having been convicted of a disqualifying crime; discharging a firearm within the City of Baltimore; and two counts of reckless endangerment. ECF 26-6 at 80-85.

In presenting a summary of the evidence adduced at trial, I shall rely on the factual recitation set forth by the Maryland Court of Special Appeals ("CSA"), now known as the Appellate Court of Maryland,[1] in an unreported opinion issued on May 26, 2015.  *See Tavon Williams v. State of Maryland*, No. 0401, Sept. Term, 2014; ECF 7-1 at 89-92.  The CSA said, ECF 7-1 at 89-92:

> At approximately 11:00 p.m. on May 1, 2012, Baltimore City Police Department ("BCPD") Detectives Mark Verkest, David Colburn, and Tanesha Todd were patrolling a "hot spot," an area known for drug transactions, in the 2400 block of Frederick Avenue in Baltimore City. According to their trial testimony, as they turned onto South Catherine Street in their unmarked police cruiser, the detectives heard a gunshot and observed numerous people fleeing the scene. They then witnessed a black man, later identified in court as Williams, wearing dark

---

[1] In the general election held in Maryland in November 2022, the voters of Maryland approved a constitutional amendment to change the name of the Maryland Court of Appeals to the Supreme Court of Maryland.  And, the voters also approved changing the name of the Maryland Court of Special Appeals to the Appellate Court of Maryland.  These changes went into effect on December 14, 2022.  *See* Press Release, Maryland Courts, *Voter-approved constitutional change renames high courts to Supreme and Appellate Court of Maryland* (Dec. 14, 2022), https://perma.cc/TL89-QFKR.  However, I shall refer to the courts by the names that were in effect when any cited decisions were issued.

clothing and gloves and holding a black handgun with a long nose. They saw the man emerge from behind a red vehicle and fire approximately three shots. Detectives Colburn and Todd saw three other men look at the shooter and then flee across the street. Detective Todd later identified those three men as Michael Smith, Cornelius Moore, and Alexus McBride, whom she knew from prior encounters.

Williams fled when he saw the detectives, prompting Detective Verkest to exit the cruiser and give chase. Williams entered a nearby field with waist-high grass but fell to the ground. As Williams rose, Detective Verkest tackled him from behind and, with the assistance of Detective Colburn, placed him in handcuffs. Detective Colburn searched Williams, incident to his arrest, to determine if he was carrying weapons. He found none. The detectives received a call advising them that injured victims had been located in the parking lot of a Checkers restaurant, across the street from the scene of the shooting. Detective Todd and other police units headed to that location. Detectives Verkest and Colburn remained at the grassy field, which they searched. Eventually, the police located a weapon, approximately 10 to 15 feet from where Williams had been tackled.  At the Checkers restaurant, Detective Todd found the two shooting victims, Alexus McBride and Michael Smith, injured but conscious: Smith had a single gunshot wound to his arm, and McBride had sustained multiple gunshot wounds.

At trial, McBride testified that on May 1, 2012, he, Cornelius Moore, and two other acquaintances had been hanging out at the corner of McHenry and Catherine Streets. A truck pulled up, and a man in a hoodie emerged. The man proceeded to point a gun at McBride and the other men. McBride and the others ran toward the Checkers restaurant across the street. Once safely there, McBride realized he had been shot several times. Michael Smith sat beside him at the restaurant as he fell unconscious. In his trial testimony, McBride did not identify the shooter as Williams. Instead, he stated that he did not see who had shot him. McBride stated that he thought it likely that the person who shot him was "Tavon," as the two had argued about drugs earlier in the day. In the hospital, McBride had also identified "Tay" from a photo array and added the following written statement: "We was beefing about drugs." Michael Smith did not testify. According to other testimony, he was "very uncooperative" with police and refused to give a statement about the shooting. He advised the prosecutor that he did not want to testify and that, if compelled to do so, he would say that Williams was not his assailant. Nonetheless, the court, over the defense's objection, admitted medical records that suggested that a Michael A. Smith had been the victim of a shooting on the evening of May 1, 2012.

At the close of the State's case-in-chief, Williams moved for judgment of acquittal. He argued that Smith had not testified and that the State could not confirm that the medical records pertained to the person who was shot at the same time as McBride. For those reasons, Williams contended that the State had presented no evidence from which a jury could find that he had anything to do with the shooting of Michael Smith. The State, in turn, highlighted Detective Todd's testimony that

she saw Williams, whom she knew from prior encounters, shooting a gun in Smith's direction; and that she observed Smith at Checkers a short time later, suffering from a gunshot wound to the arm. The State emphasized both McBride's identification of Smith as one of the men with him at Checkers, as well as the medical records, which detailed a gunshot wound to the arm that a Michael Smith had received at approximately the time of the shooting near Catherine Street. The court ruled that, "as tenuous as [the evidence] may be, particularly with regard to Michael Smith, the motion is denied." The court also denied Williams's renewed motion for judgment of acquittal at the close of the entire case.

Sentencing was held on April 3, 2014. The court sentenced Williams to eighty-six years of imprisonment. ECF 14-1 at 26-27.

Williams appealed his conviction to the CSA. ECF 7-1 at 32-53. He asserted five grounds, as follows, *id.* at 33 (capitalization omitted):

(1) The trial court erred in granting the State's motion in limine to permit it to use other crimes evidence;

(2) The trial court erred in failing to correct the State's misstatement of the evidence in closing argument;

(3) The trial court erred in admitting Smith's medical records;

(4) The trial court erred in denying Williams's motion for judgment of acquittal as to the crimes against Smith; and

(5) Williams's sentences for reckless endangerment and wear, carry, and transport, merge into other sentences.

On May 26, 2015, the CSA affirmed the convictions but remanded the case to the Circuit Court for Baltimore City for resentencing as to the counts of reckless endangerment and wearing, carrying, or transport of a handgun. *Id.* at 87-111. Williams did not seek further review with the Maryland Court of Appeals. On January 11, 2016, the Circuit Court for Baltimore City resentenced Williams to seventy-six years of imprisonment. *Id.* at 19-21.

Williams filed a Petition For Post-Conviction Relief in the Circuit Court for Baltimore City on July 16, 2017. *Id.* at 115-137. He asserted six claims:

(1) Ineffective assistance of defense counsel for "failure to preserve the issue for appellate review as to whether the trial court erred in failing to correct the State's misstatement of the evidence during the State's rebuttal closing argument." (*id.* at 121);

(2) Ineffective assistance of counsel for "failure to object to inflammatory and prejudicial testimony, or in the alternative, failure to move to strike" (*id.* at 124);

(3) Ineffective assistance of counsel "due to counsel's defunct performance in regard to Michael Smith" (*id.* at 126);

(4) Ineffective assistance of appellate counsel due to counsel's "failure to raise the issue as to whether the trial court erred in allowing the witness' 'expert opinion testimony,' over defense objection and absent proper qualification as an expert witness" (*id.* at 128);

(5) Ineffective assistance of counsel for "[f]ailure to timely file An Application for Review of Sentence by Three-Judge Panel" (*id.* at 131);

(6) "Defense Counsel's Cumulative Errors Warrant a New Trial" (*id.* at 133).

Following a hearing on Williams's post-conviction petition (ECF 14-2) on March 12, 2020, the circuit court denied the petition. ECF 7-1 at 138-150. Thereafter, Williams filed an application for leave to appeal (*id.* at 151-157), but it was denied by the CSA. *Id.* at 158-160.

On June 16, 2021, Williams moved to reopen his post-conviction petition, arguing that his post-conviction counsel committed multiple errors. *Id.* at 163-225. By Order dated November 10, 2021, the circuit court denied Williams's motion. *Id.* at 229. Williams filed an Application for Leave to Appeal on November 3, 2021. *Id.* at 230-264.[2]

On June 23, 2022, Williams filed a Writ of Actual Innocence with the Circuit Court for Baltimore City. ECF 26-1 at 3-13. He argued that his convictions should be vacated based on a document the State produced during discovery in his post-conviction proceedings that it had failed

---

[2] The State court record filed by the Respondents does not include the disposition of this appeal by the CSA. Nevertheless, it is not relevant for the Court's purposes because I conclude that Williams's claims of ineffective assistance of post-conviction counsel are not cognizable on federal habeas review. *See* Section IV(D), *infra.*

to disclose prior to his trial. *Id.* The document, attached to Williams's Writ of Actual Innocence, is a list compiled by the Baltimore City State's Attorney containing names of Baltimore City police officers with credibility issues. *Id.* at 11-13. The circuit court issued an Order on January 24, 2023, denying the Writ of Actual Innocence. ECF 21-1 at 4-6. Williams filed a Notice of Appeal on June 27, 2023. *Id.* at 7-9. It was ultimately dismissed by the Appellate Court of Maryland on January 16, 2024, without a decision on the merits, because Williams failed to comply with the court's order to file a complete copy of the record. *Id.* at 43.

Williams filed his federal Petition on January 12, 2022, and later amended it to add an additional claim. ECF 1, ECF 1-1, ECF 25. He asserts seven grounds for relief, as follows: (1) "The Trial Court Erred In Granting The State's Motion In Limine To Permit It To Use Other Crimes Evidence." (ECF 1-1 at 4); (2) "Appellate Counsel Was Ineffective For Not Raising The Issue As To Whether The Trial Court Erred In Allowing The Witness 'Expert Opinion Testimony' Over Defense's Objection And Absent Proper Qualification As An Expert Witness." (*Id.*); (3) "Trial Counsel Rendered Ineffective Assistance Of Counsel, For Not Filing An Application For Review Of Sentence By Three Judge Panel." (*Id.* at 5); (4) "Postconviction Counsel Rendered Ineffective Assistance Of Counsel For Failing To Post Convict Trial Counsel's Failure To Object To Two Improperly Worded Voir Dire Questions, That, As Framed, Improperly Shifted The Burden Of Determining One's Ability To Serve As A Juror Rather Than Having This Decided By The Trial Judge." (*Id.*); (5) "Post Conviction Counsel Rendered Ineffective Assistance Of Counsel, For Failing To Post Convict Trial Counsel's Failure To Include Within His Motion For Judgment Of Acquittal, Concerning Sufficiency Of The Evidence, And Failing To Subpoena Michael Smith And The Lack Of GSR On [Williams'] Hands And Glove To Bolster His Particularity Argument Against All Crimes Charged, Plus The Fact That The Shell Casings And Bullet Could Not

Positively Be Linked Back To The Alleged .22 Long Rifle Handgun." (*Id.* at 6); (6) "Post Conviction Counsel Rendered Ineffective Assistance Of Counsel For Failing To Post Convict Trial Counsel's Failure To Object To The Testimony Of Detective Earl Thompson Concerning The Manner In Which He Secured The Photo Of [Williams] From The Police Data Base So He Can Arrange It With Five Others For The Photo Array Which Is Other Crimes Evidence." (*Id.* at 7); and (7) the State's Attorney for Baltimore City Allow perjured testimony to go forward without correcting the testimony at Petitioners jury trial?" (ECF 25 at 1).

## II.    Standard of Review

The Petition seeks habeas corpus relief pursuant to 28 U.S.C. § 2254. This Court may grant a petition for a writ of habeas corpus only for violations of the Constitution or laws of the United States. 28 U.S.C. § 2254(a); *see Wilson v. Corcoran*, 562 U.S. 1 (2010); *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). As the Fourth Circuit explained in *Larry v. Branker*, 552 F.3d 356, 368 (4th Cir. 2009), "it is not the province of a federal habeas court to reexamine state court determinations on state law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." Indeed, "Federal courts owe state tribunals 'significant deference' with respect to 'their determination that a state prisoner isn't entitled to habeas relief.'" *Crockett v. Clarke*, 35 F.4th 231, 241 (4th Cir. 2022) (citation omitted).

Pursuant to the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal court "reviewing a habeas petition that has already been adjudicated on the merits in state court [must] give considerable deference to the state court decision." *Nicolas v. Atty. Gen. of Maryland*, 820 F.3d 124, 129 (4th Cir. 2016). If a state prisoner's claim has already been adjudicated on its merits, § 2254 restricts federal habeas relief to limited circumstances.

Under 28 U.S.C. § 2254(d)(1), the prisoner must show that the state court's determination "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). And, under § 2254(d)(2), the writ may be granted as to a decision that was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."

The Supreme Court has explained, *Williams (Terry) v. Taylor*, 529 U.S. 362, 407 (2000) (O'Connor, J., delivering the majority opinion with respect to Part II):

> [A] state-court decision can involve an "unreasonable application" of [the Supreme] Court's clearly established precedent in two ways. First, a state-court decision involves an unreasonable application ... if the state court identifies the correct governing legal rule ... but unreasonably applies it to the facts of the particular state prisoner's case. Second ... if the state court either unreasonably extends a legal principle from [the Supreme Court's] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.

Therefore, a federal court is precluded from granting habeas corpus relief "'on a claim decided on the merits in a state court unless it determines the state court's decision was contrary to, or involved an unreasonable application of clearly established federal law or was based on an unreasonable determination of the facts in light of the record evidence.'" *Crockett*, 35 F. 4th at 235; *see Harrington v. Richter*, 562 U.S. 86, 100 (2011); *Bell v. Cone*, 535 U.S. 685, 693-94 (2002); *Williams (Terry)*, 529 U.S. at 379.

A § 2254 petition must set forth specific grounds for relief. *Samples v. Ballard*, 860 F.3d 266, 273 (4th Cir. 2017); *see also Folkes v. Nelsen*, 34 F.4th 258, 267 (4th Cir. 2022). Claims by a state prisoner that he is in custody in violation of the Constitution or the laws of the United States "implicate concerns about federalism and comity[.]" *Crockett*, 35 F.4th at 241. Concerns of comity and federalism "reach their apex" when a state court has previously ruled on an alleged

wrongful conviction. *Valentino v. Clarke*, 972 F.3d 560, 575 (4th Cir. 2020). Therefore, "the standard for such claims is exceedingly high." *Crockett*, 35 F.4th at 241; *see Burt v. Titlow*, 571 U.S. 12, 19 (2013). Indeed, the Fourth Circuit has characterized the habeas standard as "an extraordinary standard of review." *Crockett*, 35 F.4th at 235.

Of import, "[t]he State possesses primary authority for defining and enforcing the criminal law, and for adjudicating constitutional challenges to State convictions." *Shinn v. Ramirez*, 596 U.S. 366, 376 (2022) (internal quotation marks and citations omitted). "The role of a federal habeas court is to guard against extreme malfunctions in the state criminal justice systems, not to apply *de novo* review of factual findings and to substitute its own opinions for the determinations made on the scene by the trial judge." *Davis v. Ayala*, 576 U.S. 257, 276 (2015) (internal quotation marks and citations omitted). Therefore, § 2254 "is not to be used as a second criminal trial, and federal courts are not to run roughshod over the considered findings and judgments of the state courts that conducted the original trial and heard the initial appeals." *Williams (Terry)*, 529 U.S. at 383; *see Walters v. Martin*, 18 F.4th 434, 441 (4th Cir. 2021). Accordingly, the habeas court may not disturb a state court judgment "absent an error that lies "'beyond any possibility for fair-minded disagreement.'"" *Mays v. Hines*, 592 U.S. 385, 386 (2021) (per curiam) (citations omitted); *see Walters*, 18 F.4th at 441.

In assessing a petitioner's habeas claims, the district court looks to the opinion of "'the last reasoned decision of a state court addressing the claim.'" *Allen v. Stephan*, 42 F.4th 223, 247 (4th Cir. 2022) (quoting *Woodfolk v. Maynard*, 857 F.3d 531, 544 (4th Cir. 2017)), *cert. denied sub nom. Chestnut v. Allen*, 143 S. Ct. 2517 (2023). And, the federal court's review of a state court decision under § 2254 is conducted "through a narrow lens . . . ." *Mahadi v. Stirling*, 20 F.4th 846, 854 (4th Cir. 2021). It requires a review of "the record in its entirety," as it existed before the last

state court to consider the matter. *Id.*; *see Mays*, 592 U.S. at 392; *Hyman v. Hoekstra*, 41 F.4th 272, 274 (4th Cir. 2022).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Williams (Terry)*, 529 U.S. at 364–65; *see* 28 U.S.C. § 2254(d)(1). "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the [petitioner's] case." *Id.* at 407.

To obtain relief, the petitioner must identify the "clearly established" legal principle on which he relies. To qualify as "clearly established," a principle must originate from an actual Supreme Court holding, not from its passing dicta. *See White*, 572 U.S. at 419. And, the holding must be described with specificity. *See Brown v. Davenport*, 596 U.S. 118 (2022). A holding at a "high level of generality" will not suffice. *Lopez v. Smith*, 574 U.S. 1, 6–8 (2014) (per curiam) (citation omitted); *see Metrish v. Lancaster,* 569 U.S. 351, 367–68 (2013). Moreover, circuit precedent cannot turn "'a general principle of Supreme Court jurisprudence into a specific legal rule'" that has not been "announced" by the Supreme Court. *Lopez*, 574 U.S. at 7 (quoting *Marshall v. Rodgers*, 569 U.S. 58, 64 (2013)).

For a state court's decision to be contrary to established federal law, the state court must have arrived at a conclusion opposite to that reached by the Supreme Court on a question of law, or must have confronted facts that are "materially indistinguishable from a relevant Supreme Court" case but nevertheless arrived at the opposite result. *Williams (Terry)*, 529 U.S. at 405; *see Barnes v. Joyner*, 751 F.3d 229, 238 (4th Cir. 2014); *Lovitt v. True*, 403 F.3d 171, 178 (4th Cir.

2005).  However, a federal habeas court "'may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied established federal law erroneously or incorrectly.'"  *Lovitt*, 403 F.3d at 178 (quoting *Williams (Terry)*, 529 U.S. at 411).

Rather, the state court's application of federal law "must also be unreasonable."  *Lovitt*, 403 F.3d at 178; *see Nicolas*, 820 F.3d at 129 (The court "cannot disturb the State court's ruling simply because it is incorrect; it must also be unreasonable."); *Barnes*, 751 F.3d at 238-39 (a state court's decision is an unreasonable application of clearly established federal law when the state court identifies the correct governing principle but unreasonably applies that principle to the facts). Under § 2254(d)(1), to be "unreasonable," the state court's application of that law must be "objectively unreasonable," not merely incorrect.  *Owens v. Stirling*, 967 F.3d 396, 411 (4th Cir. 2020); *see White v. Woodall*, 572 U.S. 415, 419 (2014); *Lockyer v. Andrade*, 538 U.S. 63, 75–76 (2003). To warrant that description, a state court must have committed "an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington*, 562 U.S. at 103.

Section 2254(d)(2) of 28 U.S.C. requires a prisoner to show that the state court proceedings "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  *See Crockett*, 35 F.4th at 241.  Factual determinations are unreasonable when they are "'sufficiently against the weight of the evidence . . . .'"  *Williams v. Stirling*, 914 F.3d 302, 312 (4th Cir. 2019) (citation omitted).  In other words, the "federal court must conclude not only that the state court's determination was wrong, but that it was *unreasonable* in light of the evidence presented, that is, it is not 'debatable among

jurists of reason.'" *Merzbacher v. Shearin*, 706 F.3d 356, 368 (4th Cir. 2013) (emphasis in original) (internal citation omitted).

However, "'a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance.'" *Titlow*, 571 U.S. at 18 (citation omitted); *see Wood v. Allen*, 558 U.S. 290, 301 (2010). "[E]ven if reasonable minds reviewing the record might disagree about the finding in question," a federal court may not conclude that the state court decision was based on an unreasonable determination of the facts. *Id.* This standard is "meant to be" one that is "difficult to meet…" *Harrington*, 562 U.S. at 102.

Of relevance, the habeas court "must presume that the state court's factual findings are correct unless the petitioner rebuts those facts by clear and convincing evidence." *Nicolas*, 820 F.3d at 129; *see Harrington*, 562 U.S. at 100-01; *Walters*, 18 F.4th at 442; 28 U.S.C. § 2254(e)(1). "Where the state court conducted an evidentiary hearing and explained its reasoning with some care, it should be particularly difficult to establish clear and convincing evidence of error on the state court's part." *Sharpe v. Bell,* 593 F.3d 372, 378 (4th Cir. 2010). This is especially true where the state court has "resolved issues like witness credibility, which are 'factual determinations' for purposes of Section 2254(e)(1)." *Id.*

Williams faces an additional hurdle if he alleges a trial court error that the State court subjected to harmless error review. Under these circumstances, a federal court cannot grant habeas relief without applying both the test outlined in *Brecht v. Abrahamson*, 507 U.S. 619 (1993), and the deferential review required by AEDPA. *Brown*, 596 U.S. 118.

*Brecht* requires a state prisoner seeking to challenge his conviction in collateral federal proceedings to show that the error had a "substantial and injurious effect or influence" on the outcome of his trial. *Brecht*, 507 U.S. at 637 (quoting *Kotteakos v. United States*, 328 U.S. 750,

776 (1946)). A "'substantial or injurious effect or influence'" means "actual prejudice." *See Brecht*, 507 U.S. at 637–38. "[A] federal court must *deny* relief to a state habeas petitioner who fails to satisfy either [*Brecht*] or AEDPA. But to *grant* relief, a court must find that the petitioner has cleared both tests." *Brown*, 596 U.S. at 134 (emphasis in *Brown*).

In sum, to succeed on any of his trial error claims, Williams must convince this federal habeas court that there is "'grave doubt'" about "whether the trial error affected the verdict's outcome," *id.* at 135-36, *and* demonstrate that every "fairminded jurist would agree that an error was prejudicial." *Id.* at 136.

As discussed in detail below, these standards foreclose Williams's claims.

### III.    Procedural Default

Procedural default occurs when a habeas petitioner fails to present the claim to the highest state court with jurisdiction to hear it, and the state courts would now find that the petitioner cannot assert that claim. *Mickens v. Taylor*, 240 F.3d 348, 356 (4th Cir. 2001); *Breard v. Pruett*, 134 F.3d 615, 619 (4th Cir. 1998). A procedural default also may occur where a state court declines "to consider the merits [of a claim] on the basis of an adequate and independent state procedural rule." *Yeatts v. Angelone*, 166 F.3d 255, 260 (4th Cir. 1999); *see also Gray v. Zook*, 806 F.3d 783, 798 (4th Cir. 2015) ("When a petitioner fails to comply with state procedural rules and a state court dismisses a claim on those grounds, the claim is procedurally defaulted."). As the Fourth Circuit has explained, "if a state court clearly and expressly bases its dismissal of a habeas petitioner's claim on a state procedural rule, and that procedural rule provides an independent and adequate ground for the dismissal, the habeas petitioner has procedurally defaulted his federal habeas claim." *Breard*, 134 F.3d at 619 (citing *Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991)).

For a person convicted of a criminal offense in Maryland, exhaustion may be accomplished either on direct appeal or in post-conviction proceedings. To exhaust a claim on direct appeal in non-capital cases, a defendant must assert the claim in an appeal to the Appellate Court of Maryland and then to the Supreme Court of Maryland by way of a petition for writ of certiorari. *See* Md. Code (2020 Repl. Vol., 2024 Supp.), §§ 12-201, 12-301 of the Courts and Judicial Proceedings Article ("C.J."). To exhaust a claim through post-conviction proceedings, a defendant must assert the claim in a petition filed in the circuit court in which the inmate was convicted, due within ten years of the date of sentencing. *See* Md. Code (2018 Repl. Vol., 2024 Supp.), §§ 7-101–7-103 of the Criminal Procedure Article ("C.P."). After a decision on a post-conviction petition, further review is available through an application for leave to appeal filed with the Appellate Court of Maryland. *Id.* § 7-109. If the Appellate Court of Maryland denies the application, there is no further review available, and the claim is exhausted. C.J. § 12-202.

As noted, procedural default occurs when a habeas petitioner fails to exhaust such available state remedies and "'the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred.'" *Breard*, 134 F.3d at 619 (quoting *Coleman*, 501 U.S. at 735 n.1). Maryland law does not permit a second and successive state petition for post-conviction relief. *See* C.P. § 7-103(a).

Respondents argue that Ground One, which was asserted in Williams's direct appeal, is procedurally defaulted because he failed to file a petition for a writ of certiorari with the Maryland Court of Appeals. ECF 14 at 21. I agree. Because the deadline for Williams to file a writ of certiorari to the high court of Maryland has long since passed, *see* Md. Rule 8-302*,* Ground One is procedurally defaulted. *See also Longworth v. Ozmint*, 377 F.3d 437, 448 (4th Cir. 2004)

(declining to review a claim not raised in a petition for a writ of certiorari to the relevant state supreme court).

Further, Respondents argue that Ground Seven is procedurally defaulted because it was never presented to the state courts. ECF 26 at 9-15.   Again, I agree. The record reflects that Williams failed to present a claim to the state courts, in his direct appeal or in his post-conviction petition, that the state permitted the use of perjured testimony at his trial. ECF 7-1 at 32-53, 115-137; ECF 26-1 at 3-13.

If a procedural default has occurred, a federal court may not address the merits of a state prisoner's habeas claim unless the petitioner can show (1) both cause for the default and prejudice that would result from failing to consider the claim on the merits; or (2) that the failure to consider the claim on the merits would result in a miscarriage of justice, specifically, the conviction of one who is actually innocent.  *See Murray v. Carrier*, 477 U.S. 478, 495-96 (1986); *Breard*, 134 F.3d at 620.   "Cause" consists of "'some objective factor external to the defense [that] impeded counsel's efforts' to raise the claim in state court at the appropriate time."  *Breard*, 134 F.3d at 620 (quoting *Murray*, 477 U.S. at 488).

To demonstrate prejudice, the petitioner must show "not merely that the errors at his trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions."  *United States v. Frady*, 456 U.S. 152, 170 (1982); *see Murray*, 477 U.S. at 494.

Under the second exception, a petitioner may obtain review of procedurally defaulted claims if the case "falls within the 'narrow class of cases . . . implicating a fundamental miscarriage of justice.'"  *Schlup v. Delo*, 513 U.S. 298, 314-15 (1995) (quoting *McCleskey v. Zant*, 499 U.S. 467, 494 (1991)).   Such cases are generally limited to those for which the petitioner can show that

"a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray*, 477 U.S. at 496.

Neither exception to the procedural default bar applies here. Williams responded to the Court's Order of April 17, 2024, to address Respondent's procedural default arguments by arguing the merits of Ground Seven. ECF 27. Nevertheless, out of an abundance of caution, the Court will construe Williams's response as an assertion of actual innocence, and cause and prejudice.

"[A] credible showing of actual innocence may allow a prisoner to pursue his constitutional claims on the merits notwithstanding the existence of a procedural bar to relief." *McQuiggin v. Perkins*, 569 U.S. 383, 392 (2013). "[The] fundamental miscarriage of justice exception, is grounded in the equitable discretion of habeas courts to see that federal constitutional errors do not result in the incarceration of innocent persons." *Id.* "In certain exceptional cases involving a compelling claim of actual innocence, however, the state procedural default rule is not a bar to a federal habeas corpus petition." *House v. Bell*, 547 U.S. 518, 522 (2006) (citing *Schlup*, 513 U.S. at 319–322).

"[P]risoners asserting innocence as a gateway to defaulted claims must establish that, in light of new evidence, 'it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt.'" *House*, 547 U.S. at 536-37 (quoting *Schlup*, 513 U.S. at 327). Stated differently, "[a] petitioner's burden at the gateway stage is to demonstrate ... that more likely than not any reasonable juror would have reasonable doubt." *Id.* at 538. "To be credible, ... a claim [of actual innocence] requires petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial."

*Schlup*, 513 U.S. at 324. "If new evidence so requires, this [review] may include consideration of the credibility of witnesses presented at trial." *House*, 547 U.S. at 538-39 (citation omitted).

The Supreme Court has "caution[ed], however, that tenable actual-innocence gateway claims are rare: 'A petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror acting reasonably would have voted to find him guilty beyond a reasonable doubt.'" *McQuiggin*, 569 U.S. at 386 (brackets omitted) (quoting *Schlup*, 513 U.S. at 329). "It is not the district court's independent judgment as to whether reasonable doubt exists that the standard addresses; rather the standard requires the district court to make a probabilistic determination about what reasonable, properly instructed jurors would do." *Schlup*, 513 U.S. at 329. The gateway actual innocence "standard is demanding and permits review only in the extraordinary case." *House*, 547 U.S. at 538 (citation omitted); *see, e.g., McQuiggin*, 569 U.S. at 401 ("We stress once again that the [actual innocence] standard is demanding."); *Wilson v. Greene*, 155 F.3d 396, 404 (4th Cir. 1998) ("Claims of actual innocence … presented … as gateways to excuse a procedural default … should not be granted casually.").

Williams's excuse for his procedural default appears to be premised on two separate documents:  (1) a list of police witnesses with credibility issues compiled by the Baltimore State's Attorney's Office that was the basis of Williams's Writ of Actual Innocence ("do not call list") (ECF 26-1 at 11-13); and (2) a crime scene log that is the basis of Ground Seven. ECF 25-1. Neither document, or the arguments associated with them, qualifies for the actual innocence exception.

"Do Not Call" List

Williams argued in his Writ of Actual Innocence that on May 25, 2022, the State produced a list to him of 305 Baltimore Police Officers with credibility issues, referred to by the Baltimore

Sun as the "do not call" list. ECF 26-1 at 6, 11-13. Williams claims that he is innocent because three witnesses who testified at his trial are on the list: Kevin Beardsley, Sergeant Fallon, and Sergeant Mistysyn. *Id.* at 26-1 at 3-10.[3]

The circuit court made factual determinations when it denied Williams's Writ of Actual Innocence. ECF 21-1 at 4-6. "Where a state court looks at the same body of relevant evidence and applies essentially the same legal standard to that evidence that the federal court does under [the actual innocence analysis], Section 2254(e)(1) requires that the state court's findings of fact not be casually cast aside." *Sharpe*, 593 F.3d at 379. The Court is also required to defer to any factual findings made by the trial court that are relevant to Williams's claims of actual innocence. *See Winston v. Kelly*, 592 F.3d 535, 557 (4th Cir. 2010) ("AEDPA deference under § 2254(e)(1), however, will be appropriate to any relevant factual findings made by the Virginia Supreme Court.").

The circuit court found that Williams could not meet the standard for actual innocence. ECF 21-1 at 4-6. Particularly, the circuit court found that Kevin Beardsley's testimony was helpful to Williams's defense. *Id.* Further, the circuit court found that the infractions that landed Sergeants Fallon and Mistysyn on the "do not call" list would not have been relevant, admissible evidence at Williams's trial, and therefore, there was no substantial possibility that the trial would have had a different result had Williams been able to use the "do not call list."

The Court must defer to the circuit court's conclusion that the "do not call list" would not have affected the outcome of the trial. Discussed in detail below, Williams cannot establish that no reasonable juror would have found him guilty if the "do not call" list had been available during

---

[3] Sergeant Mistysyn's name is spelled differently in different places in the record. For consistency, the Court uses the spelling found in the trial transcript. ECF 26-4 at 7.

his trial.  This is because three other police officers testified that they saw Williams with a gun in his hand at the time of the shooting.

<u>Crime Scene Log</u>

In Ground Seven, Williams contends that the State permitted the use of perjured testimony at his trial because, contrary to the testimony of Fallon and Mistysyn, a crime scene log reflects that they were not at the crime scene at the same time. ECF 25. At trial, Sergeants Fallon and Mistysyn testified that they were together conducting a manual search in a grassy area where Williams was arrested when Sergeant Mistysyn found the firearm used in the shooting. ECF 26-4 at 13-15, 31-33. The crime scene log produced by Williams lists the location as "300 blk S. Catherine" and shows that Sgt. Mistysyn was present from 11:26 p.m. to 11:45 p.m. and Sgt. Fallon was present from 12:07 p.m. to 12:33 p.m. ECF 25-1.

As an initial matter, the crime scene log may not qualify as "new evidence."[4] Unlike the "do not call" list, Williams offers no explanation for how or when he obtained this document. ECF 25, 27. It was not offered as an exhibit at trial (ECF 26-3, 26-4, 26-5, 26-6) and it is unknown whether Williams's attorney was in possession of the document at the time of trial.

---

[4] The Court notes that there is a circuit split regarding whether "new evidence" means "newly discovered" or "newly presented." *Reeves v. Fayette SCI*, 897 F.3d 154, 161–62 (3d Cir. 2018). The Eighth Circuit has held that "evidence is new only if it was not available at trial and could not have been discovered earlier through the exercise of due diligence." *Amrine v. Bowersox*, 238 F.3d 1023, 1028 (8th Cir. 2001). The Seventh Circuit and Ninth Circuit have held that federal habeas petitioners may demonstrate an actual innocence claim through "newly presented" exculpatory evidence, that is, evidence not presented to the jury at trial. See *Gomez v. Jaimet*, 350 F.3d 673, 679–80 (7th Cir. 2003); *Griffin v. Johnson*, 350 F.3d 956, 963 (9th Cir. 2003). The Courts of Appeals for the First, Second, and Sixth Circuits have intimated that petitioners may establish actual innocence claims through newly presented evidence. *See Riva v. Ficco*, 803 F.3d 77, 84 (1st Cir. 2015); *Cleveland v. Bradshaw*, 693 F.3d 626, 633 (6th Cir. 2012); *Rivas v. Fischer*, 687 F.3d 514, 543, 546–47 (2d Cir. 2012).

Respondents argue that there is no merit to Williams's argument because the document reflects the location as "300 blk S. Catherine," which is not where the weapon was found; the State claims it was found in the "2500 block of Frederick Avenue." ECF 26 at 16-19. The Court does not find the Respondents' argument or the referenced portions of the trial transcript dispositive because Sergeants Fallon and Mistysyn testified that they responded to "Frederick and Catherine" (ECF 26-4 at 10, 31), there is no trial testimony about the crime scene log, and there is no separate crime scene log for the 2500 block of Frederick Avenue.

Nevertheless, Williams cannot base an actual innocence claim on the crime scene log because he cannot establish that no reasonable juror would have convicted him if this document had been used at his trial. Even if the jury had completely disregarded the testimony of Sergeants Fallon and Mistysyn about finding the weapon in the grass, there were three other police officers who testified that they witnessed Williams with a gun in his hand at the time of the shooting.

Detective Verkest testified that he was in a police vehicle that turned onto Catherine Street when he heard a gunshot, he saw Williams with a gun in his right hand, and then he heard three more shots. ECF 26-3 at 20. Detective Colburn testified that he was driving a police vehicle at Catherine and Frederick and heard a gunshot. *Id.* at 84-85. He then saw Williams holding a revolver in his right hand and Williams "fired three more shots." *Id* at 86. Detective Todd testified that she was the rear passenger in the police vehicle, heard four gunshots, and saw Williams standing on Catherine Street with a handgun in his hand. *Id.* at 150. This testimony forecloses an actual innocence claim based on the crime scene log.

Williams also cannot show "cause and prejudice" for defaulting as to Ground One or Ground Seven. The "do not call list" bears no relationship to claims raised in either Ground One or Ground Seven. The crime scene log is related to Williams's claim in Ground Seven that the

State permitted perjured testimony. However, Williams cannot show "cause" because it is unclear whether Williams's attorney was in possession of the crime scene log at the time of trial or whether Williams was in possession of the document in time to raise Ground Seven in his direct appeal or post-conviction petition. As such, Williams cannot show that he was prevented from properly raising Ground Seven in State court.

In any event, as discussed below, even if Grounds One and Seven were not procedurally defaulted, they are subject to dismissal for lack of merit.

## IV.   Discussion

### A.   Ground One

In Ground One, Williams contends that the trial court erred in granting the state's motion in limine, which permitted the jury to hear "other crimes" evidence. The Court has concluded that Ground One is procedurally defaulted. Regardless of the procedural default, the Court also finds that Ground One lacks merit.

After jury selection and before opening statements, the State moved the trial court for permission to admit the entire statement made by witness Alexus McBride when he identified Williams during a photo array. ECF 26-3 at 4-8. McBride wrote a statement on the back of the photo array that said, "we was beefing about drugs." ECF 26-4 at 146. The trial court ruled that the statement demonstrated a potential motive and any prejudice was outweighed by its probative value. ECF 26-3 at 8.

Williams asserted Ground One in his direct appeal to the CSA, which concluded that the trial court had not abused its discretion in granting the State's motion in limine because McBride's statement was relevant to motive for the attempted murder, McBride's trial testimony substantiated

the statement, and any prejudice was not undue because it was inextricably intertwined with the motive for the attempted murder. ECF 7-1 at 95-97.

"[I]n considering federal habeas corpus issues involving state evidentiary rulings, [federal courts] do not sit to review the admissibility of evidence under state law unless erroneous evidentiary rulings were so extreme as to result in a denial of a constitutionally fair proceeding. It is only in circumstances impugning fundamental fairness or infringing specific constitutional protections that a federal question is presented." *Barbe v. McBride*, 521 F.3d 443, 452 (4th Cir. 2008) (internal citation and quotation marks omitted); *see also Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States.").

Williams has not established that the trial court committed an error of constitutional dimension. Nor can Williams meet the standard for habeas relief on a trial court error. Considering the testimony from three law enforcement officers who heard the gun shots and saw Williams at the crime scene with a gun in his hand (ECF 26-3 at 20, 86, 150), he cannot establish that the admission of the photo array statement had a "substantial and injurious effect or influence" on the outcome of his trial, *Brecht*, 507 U.S. at 637, *and that* every fairminded jurist would agree that the error was prejudicial. *Brown,* 596 U.S. at 136.

**B. Ground Two**

In Ground Two, Williams contends that his appellate counsel was ineffective for failing to raise on appeal that the trial court erred when it permitted State witness Amy Scott to give expert

opinion testimony on why fingerprint evidence was not found on the firearm used in the shootings. Respondent argues that Ground Two lacks merit. ECF 14 at 28-31.

On the third day of trial, the State called Baltimore Police Department crime lab technician Amy Scott to testify. ECF 26-4 at 48-70. Scott testified that she dusted the revolver recovered from the crime scene for prints and none were found. *Id.* at 60-61. The prosecutor then asked Scott why she was not able to find any fingerprints. *Id.* at 61. The defense objection was overruled, and Scott responded, *id.*:

> Someone may have been wearing gloves. It could have been the temperature, the conditions outside, the weather conditions, items may have been wet. The person handling the object may or may not have been perspiring enough to leave latent fingerprints, the oils that would meet the ridge detail. That's just some of the reasons why they may or may not have fingerprints. And also, the surface, the metal just may not be a conducive surface to holding latent fingerprints.

Williams asserted Ground Two in his post-conviction petition. ECF 7-1 at 128-131. The circuit court found that appellate counsel's decision not to raise the issue concerning Amy Scott's testimony was not unreasonable because it lacked merit and Williams failed to articulate how he was prejudiced. *Id.* at 148-149.

The Sixth Amendment to the Constitution guarantees a criminal defendant the right to effective assistance of competent counsel. *Strickland v. Washington*, 466 U.S. 668, 686 (1984); *see also Buck v. Davis*, 580 U.S. 100, 118 (2017); *United Staters v. Ductan*, 800 F.3d 642, 648 (4th Cir. 2015). To mount a successful challenge based on a Sixth Amendment claim of ineffective assistance of counsel, a petitioner must satisfy the two-pronged test set forth in *Strickland*, 466 U.S. at 687-88; *see Williams (Terry)*, 529 U.S. at 390; *United States v. Sutherland*, 103 F.4th 200, 207-08 (4th Cir. 2024); *United States v. Winbush*, 922 F.3d 227, 229 (4th Cir. 2019); *United States v. Hall*, 771 F. App'x 226, 227 (4th Cir. 2019) (per curiam); *United States v. Carthorne*, 878 F.3d 458, 465 (4th Cir. 2017); *United States v. Powell*, 850 F.3d 145, 149 (4th Cir. 2017).

First, the petitioner must show that counsel's performance was deficient.  Second, the petitioner must show that he was prejudiced by the deficient performance.  *Strickland*, 466 U.S. at 687; *see Buck*, 580 U.S. at 118; *Chaidez v. United States*, 568 U.S. 342, 348 (2013); *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000); *Hill v. Lockhart*, 474 U.S. 52, 57 (1985); *Winbush*, 922 F.3d at 229.  The petitioner must prove his claim by a preponderance of the evidence.  *United States v. Mayhew*, 995 F.3d 171, 176 (4th Cir. 2021; *United States v. Pettiford*, 612 F.3d 270, 277 (2010).

With regard to the first prong, the petitioner must demonstrate that his attorney's performance fell "below an objective standard of reasonableness," as measured by "prevailing professional norms."  *Strickland,* 466 U.S. at 688; *see Harrington*, 562 U.S. at 104; *Sutherland*, 103 F.4th at 207–08; *Richardson*, 820 F. App'x at 225; *Powell*, 850 F.3d at 149; *Hall*, 771 F. App'x at 227.  The central question is whether "an attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom."  *Harrington*, 562 U.S. at 88 (quoting *Strickland*, 466 U.S. at 690).

The Supreme Court recently reiterated that the "first prong sets a high bar."  *Buck*, 480 U.S. at 118.  Notably, a "lawyer has discharged his constitutional responsibility so long as his decisions fall within the 'wide range of professionally competent assistance.'"  *Id.* (citation omitted).  The standard for assessing such competence is "highly deferential" and has a "strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance."  *Strickland*, 466 U.S. at 669.  Judicial scrutiny of counsel's performance must be "'highly deferential'" and not based on hindsight.  *Stokes v. Stirling*, 10 F.4th 236, 246 (4th Cir. 2021) (citing *Strickland*, 466 U.S. at 689).

To satisfy the high bar, the burden is on the petitioner to establish "'that counsel made errors so serious that his "counsel" was not functioning as the "counsel" guaranteed by the Sixth

Amendment.'" *Harrington*, 562 U.S. at 88 (quoting *Strickland*, 466 U.S. at 687). Notably, "the *Strickland* standard must be applied with scrupulous care," because "the standard of judging counsel's representation is a most deferential one." *Harrington*, 562 U.S. at 105; *see United States v. Morris*, 917 F.3d 818, 823 (4th Cir. 2019). Indeed, "[k]eenly aware of the difficulties inherent in evaluating counsel's performance, the Supreme Court has admonished that courts 'must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" *Lawrence*, 517 F.3d at 708 (quoting *Strickland*, 446 U.S. at 689); *see Cullen v. Pinholster*, 563 U.S. 170, 189 (2011); *Harrington*, 562 U.S. at 104; *Richardson*, 820 F. App'x at 225-26; *Lee v. Clarke*, 781 F.3d 114, 122 (4th Cir. 2015). Therefore, "[j]udicial scrutiny of counsel's performance must be highly deferential." *Strickland*, 466 U.S. at 689.

Second, the petitioner must show that his attorney's deficient performance "prejudiced [his] defense." *Strickland*, 466 U.S. at 687. To satisfy the "prejudice prong," a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694; *see also Buck*, 580 U.S. at 119. "A reasonable probability is a probability sufficient to undermine confidence in the outcome" of the proceedings. *Strickland*, 466 U.S. at 687; *see Thornell v. Jones*, 602 U.S. 154, 155 (2024) (death penalty case).

A strong presumption of adequacy attaches to counsel's conduct, so strong in fact that a petitioner alleging ineffective assistance of counsel must show that the proceeding was rendered fundamentally unfair by counsel's affirmative omissions or errors. *Strickland*, 466 U.S. at 696. Thus, "[a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689. A

petitioner is not entitled to post-conviction relief based on prejudice where the record establishes that it is "not reasonably likely that [the alleged error] would have made any difference in light of all the other evidence of guilt." *Berghuis v. Thompkins*, 560 U.S. 370, 390 (2010).

The two-pronged test articulated in *Strickland* for trial counsel also applies to claims of ineffective assistance of appellate counsel. *See Smith v. Robbins*, 528 U.S. 259, 285 (2000) (stating that "the proper standard for evaluating [the] claim that appellate counsel was ineffective . . . is that enunciated in *Strickland v. Washington* . . . ."); *Smith v. Murray*, 477 U.S. 527, 535–36 (1986). "In applying this test to claims of ineffective assistance of counsel on appeal . . . reviewing courts must accord appellate counsel the 'presumption that he decided which issues were most likely to afford relief on appeal.'" *Bell v. Jarvis*, 236 F.3d 149, 164 (4th Cir. 2000) (quoting *Pruett v. Thompson*, 996 F.2d 1560, 1568 (4th Cir. 1993)).

Notably, "[c]ounsel is not obligated to assert all nonfrivolous issues on appeal, as '[t]here can hardly be any question about the importance of having the appellate advocate examine the record with a view to selecting the most promising issues for review.'" *Bell*, 236 F.3d at 164 (quoting *Jones v. Barnes*, 463 U.S. 745, 752); *see also Smith v. South Carolina*, 882 F.2d 895, 899 (4th Cir. 1989). In *Barnes*, 463 U.S. 745, the Supreme Court said, *id.* at 751–52: "Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues." Indeed, "[t]his process of 'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." *Smith*, 477 U.S. at 536 (quoting *Barnes*, 463 U.S. at 751–52); *see also Smith*, 882 F.2d at 899 (counsel's failure to raise a weak constitutional claim may constitute an acceptable

strategic decision designed "to avoid diverting the appellate court's attention from what [counsel] felt were stronger claims").

In evaluating whether the petitioner has satisfied the two-pronged test set forth in *Strickland*, a court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." *Strickland*, 466 U.S. at 697. Nor must a court address both components if one is dispositive. *Jones v. Clarke*, 783 F.3d 987, 991 (4th Cir. 2015). This is because failure to satisfy either prong is fatal to a petitioner's claim. As a result, "there is no reason for a court . . . to address both components of the inquiry if the defendant makes an insufficient showing on one." *Strickland*, 466 U.S. at 697.

Williams cannot show that the circuit court's denial of Ground Two was an unreasonable application of *Strickland*. Three law enforcement witnesses saw Williams with a gun in his hand. ECF 26-3 at 20, 86, 150. Additionally, these witnesses testified that Williams was wearing gloves. *Id.* at 28, 91, 128. Any reasonable lay juror could have concluded that Williams was the shooter even though his fingerprints did not appear on the weapon. At best, the admission of Scott's testimony would have been considered harmless on appeal and Williams cannot demonstrate that he was prejudiced by his appellate counsel's performance.

## C. Ground Three

In Ground Three, Williams contends that his trial counsel was ineffective for failing to submit his case to a three-judge panel for sentence review. Respondents argue that Ground Three is non-cognizable in habeas review and lacks merit. ECF 14 at 31-44. The Court agrees.

Williams is not entitled to habeas relief on the grounds that his counsel was ineffective for failing to file a motion for sentence review by a three-judge panel. Habeas relief is only available when the petitioner is "in custody in violation of the Constitution or laws or treatises of the United

States." 28 U.S.C. § 2254. In other words, Williams's custody does not stem from his counsel's failure to file a request for review by a three-judge panel. Moreover, 28 U.S.C. § 2254(i) overtly prohibits habeas relief based on ineffective assistance of counsel in collateral review proceedings. *See Wall v. Kholi*, 562 U.S. 545 (2011) (finding that a motion for discretionary sentence reduction is collateral review).

In any event, Ground Three lacks merit. Williams asserted Ground Three in his post-conviction petition. ECF 7-1 at 131-133. The circuit court denied relief, concluding that Williams failed to prove that he asked his counsel to file a request for a three-judge panel. *Id.* at 149. Absent clear and convincing evidence to the contrary, the Court is bound to accept the factual findings of the circuit court. *See* 28 U.S.C. § 2254(e)(1). For this reason, Williams cannot show that his counsel's performance was deficient or that the circuit court's adjudication of Ground Three is an unreasonable application of *Strickland*.

### D.  Grounds Four, Five, and Six

In Grounds Four, Five and Six, Williams contends that he is entitled to habeas relief because his post-conviction counsel was ineffective by failing to adequately argue and present meritorious claims and contentions. Respondents contend that these grounds for relief are non-cognizable in federal habeas corpus review. ECF 7 at 15-16. The Court agrees.

AEDPA explicitly prohibits relief based on ineffective assistance of post-conviction counsel. *See* 28 U.S.C. § 2254(i) ("The ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254."). Claims of error occurring in a state post-conviction proceeding cannot serve as a basis for federal habeas corpus relief. *Bryant v. State of Md.*, 848 F.2d 492, 493 (4th Cir. 1988). Therefore, habeas relief is not available for Grounds Four, Five, and Six.

### E.  Ground Seven

In Ground Seven, Williams contends that he is entitled to habeas relief because the prosecutor permitted the use of perjured testimony. Specifically, Williams contends that Sergeants Mistysyn and Fallon lied because a crime scene log contradicts their testimony that they were together when the firearm was found. ECF 25. As discussed above, Ground Seven is procedurally defaulted because Williams failed to present it to the Maryland State courts. Ground Seven is without merit for the reasons that follow.

In *Napue v. People of State of Ill.*, 360 U.S. 264 (1959), the Supreme Court established that the government may not knowingly use false evidence, including false testimony, to obtain a tainted conviction or allow it to go uncorrected when it appears. "False testimony includes both perjury and evidence that, 'though not itself factually inaccurate,' . . . creates a false impression of facts which are known not to be true." *Burr v. Jackson*, 19 F.4th 395, 410 (4th Cir. 2021).

A *Napue* claim thus "requires a showing of the [(1)] falsity and [(2)] materiality of testimony and [(3)] the prosecutor's knowledge of its falsity." *Basden v. Lee*, 290 F.3d 602, 614 (4th Cir. 2002). A petitioner can show materiality for *Napue* purposes "if there is *any reasonable likelihood* that the false testimony *could have affected* the judgment of the jury." *United States v. Agurs*, 427 U.S. 97 (1976), *holding modified by United States v. Bagley*, 473 U.S. 667 (1985) (emphasis added); *accord Daniels v. Lee*, 316 F.3d 477, 493 (4th Cir. 2003); *United States v. Arias*, 217 F.3d 841 (4th Cir. 2000) (per curiam) (orally argued but unpublished table decision).

Respondents argue that Sergeants Mistysyn and Fallon did not provide false testimony because the log produced by Williams pertains to an area of the crime scene where the firearm was not recovered. ECF 26 at 16-22. Because Williams failed to present his *Napue* claim to the State courts, however, the Court cannot make a conclusion on any of the elements of Ground Seven.

Under the circumstances, this Court is prohibited from considering any evidence that was not presented to the Maryland State courts. *See* 28 U.S.C.§ 2254(e)(2).[5] As such, Williams cannot establish the elements of Ground Seven.

## V.  Certificate of Appealability

Rule 11(a) of the Rules Governing Section 2254 Cases provides that the district court "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Because the accompanying Order is a final order adverse to the applicant, 28 U.S.C. § 2253(c)(1) requires issuance of a certificate of appealability before an appeal can proceed.

A certificate of appealability may issue if the prisoner has made a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a district court rejects constitutional claims on the merits, a petitioner may satisfy the standard by demonstrating that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  When a petition is denied on procedural grounds, the petitioner may meet the standard by showing that reasonable jurists "would find it debatable whether the petition states a valid claim of the denial of a constitutional right" and "whether the district court was correct in its procedural ruling."  *Id.*

Williams has failed to satisfy this standard on any of his claims.  Therefore, a certificate of appealability shall not issue.

## VI.    Conclusion

For the foregoing reasons, I shall deny Williams's Petition for writ of habeas corpus.  And, I decline to issue a certificate of appealability.

---

[5] Discussed in Section II, a successful *Napue* claim would not have resulted in a finding of innocence. Thus, Williams cannot meet the requirements for an evidentiary hearing set forth in 28 U.S.C. § 2254(e)(2).

A separate Order follows.

       November 20, 2024                              /s/

Date                                      Ellen L. Hollander
                                       United States District Judge